## A. W. THOMPSON et al. v. W. W. PINNELL, Appellant.

### Division One, November 29, 1911.

1. **EQUITY JURISDICTION: Cloud upon Title: Not Void on Face: Extrinsic Evidence: Service of Process.** The owner of a legal title who is in possession, or the owner of an equitable title whether in possession or not, may, in either case, sue in equity to remove a cloud on his title to real estate whenever the deed, instrument or record creating the cloud is not void on its face, but resort must be had to extrinsic oral testimony

237 Sup.—35

to show that fact.  In this case the validity of the order of sale of the property forming the subject of the suit is not impeached by anything appearing upon the records or in the files of the probate court.  Therefore, if it is void, that fact must be shown by extrinsic oral testimony, proving the charge in plaintiffs' petition, that the order of sale was made without personal service of notice on the heirs of the deceased owner of the land, and hence without statutory authority.  Plaintiffs' petition, therefore, states a cause of action in equity.

2. **EVIDENCE: Its Improper Admission by Chancellor: Not Reversible Error.**  The admission of incompetent evidence by the chancellor in the trial of an equity suit constitutes no ground for reversing the judgment, for the reason that suits in equity are triable anew on appeal.  The appellate court can exclude from its consideration any inadmissible evidence contained in the record, and base its decree upon the preponderance of the competent evidence.

3. ————: **Its Improper Exclusion by Chancellor: Reversible Error: Service of Notice: Proof.**  The exclusion of competent evidence by the chancellor in the trial of an equity suit is a grave error.  The vital point in this suit was the question of fact as to personal service upon the plaintiffs of notice of the administratrix's petition to sell their ancestor's land for the payment of estate debts.  Three of the plaintiffs testified in a general negative way that they had not been personally served with such notice.  The defendant then proffered the testimony of the sheriff, whose duty it was to serve such notice, to prove, first, that diligent and unavailing search had been made for the papers showing a return of service of such notice, and, second, the contents of the process served by him.  The chancellor excluded the testimony of the sheriff, and it is *held* that such exclusion is reversible error.

4. ————: **Secondary: Proof of Contents of Lost Records.**  It is always competent, after proof of the loss or destruction of judicial records, including writs and process, or after diligent and complete search has been made in the proper places without success, to prove their contents by any secondary evidence, where the case does not from its nature disclose the existence of other and better evidence.

Appeal from Cape Girardeau Court of Common Pleas.
—*Hon. Benjamin F. Davis*, Judge.

REVERSED AND REMANDED.

*T. J. Brown* and *Ward & Collins* for appellant.

(1)  The petition does not state facts sufficient to constitute a cause of action in equity and to support the judgment herein.  Said petition shows on its face that equity will not lie.  Janney v. Spedden, 38 Mo. 402; Holland v. Johnson, 80 Mo. 34; Russell v. Lumber Co., 112 Mo. 40; Clark v. Life Ins. Co., 52 Mo. 272; Mason v. Black, 87 Mo. 329; Odle v. Odle, 73 Mo. 289, l. c. 295; Benton County v. Morgan, 163 Mo. 661; Stockton, Ex'r, v. Ranson, 60 Mo. 539; Verdin v. City, 131 Mo. 112.  Here plaintiffs pleaded specifically and definitely that the defect of defendant's title appears on the face of the probate record.  They do not plead any facts that would require oral testimony or extrinsic evidence, but stand on the broad ground that the sale was void.  If the order or judgment is void and the records show it, they plead themselves out of a court of equity.  (2)  The defendant, as is pleaded in the petition, was in possession of the land, for the petition definitely and specifically pleads "that defendant has received the rents and profits from said real estate since the 13th day of August, 1901;" that being true, plaintiffs cannot maintain an action to remove a cloud upon the title unless plaintiffs are in possession.  "The party claiming title to land and being out of possession cannot invoke equitable jurisdiction to remove cloud upon title." Davis v. Sloan, 95 Mo. l. c. 553; Turner v. Hunter, 225 Mo. l. c. 83; Keane v. Kyne, 66 Mo. 216; Clark v. Ins. Co., 52 Mo. 272; Janney v. Spedden, 38 Mo. 395; Beedle v. Mead, 81 Mo. l. c. 303; Jewett v. Boardman, 181 Mo. l. c. 658; Graves v. Ewart, 99 Mo. 13; Davis v. Sloan, 95 Mo. 552; McRee v. Gardner, 131 Mo. 599. (2)  The court erred in its rulings in admitting and rejecting testimony.  When defendant undertook to rebut and overthrow the proof made by plaintiff, being the same sort of proof, parol testimony, the court

refused to hear it. Defendant offered to show by the sheriff that he actually served notices as required by law upon these very plaintiffs and made return thereof to the probate court, but the court refused to hear this testimony. Plaintiffs had pleaded in their petition that there was no such notice served; they had taken the stand, both sides had conceded that these notices served upon these parties, and the sheriff's return thereon, were not in the archives of the probate court, and an attorney for plaintiffs had testified that he made a thorough examination, he and the judge and the clerk of the probate court, and no order of publication or notice of sale or notice to the heirs could be found; so it was competent for defendant to rebut the proof made by plaintiff and show that these plaintiffs had been in truth and fact duly served with notice as required by law that application would be made to sell this real estate. Desloye v. Tucker, 196 Mo. 603; Bray v. Adams, 114 Mo. 492.

*John T. McKay* for respondents.

The petition states a good cause of action. Jewett v. Boardman, 181 Mo. 656; Harrington v. Utterback, 57 Mo. 519; Gardener v. Turner, 99 Mo. 523; Brooks v. Owen, 112 Mo. 251; Price v. Springfield Real Estate Co., 101 Mo. 119; Desloge v. Tucker, 114 Mo. 603. The last two cases cited are cited for the purpose of showing the court that the probate judgment is presumptively valid and to further show the court that it is necessary to introduce evidence in order to effect the court's jurisdiction in failing to make the order notifying the heirs and devisees who reside in the county, of the intention to sell the real estate.

BOND, C.—This is a suit in equity by the heirs of W. T. Thompson to cancel a deed made by the administratrix of their father's estate in pursuance of an order of sale of certain lands to pay debts.

The petition prays that plaintiffs be declared to be the owners in fee simple of the land described in said deed and that an accounting be taken between them and the defendant, who was the purchaser of said land at the sale by the administratrix.

The equities stated as the ground for relief are that the sale in question was ordered upon a publication imperfect in its terms and without any personal service of notice upon the plaintiff heirs, who resided at the time in the county where the administration was pending.

The defendant answered, admitting the death of W. T. Thompson in 1896; the qualification of his wife as his administratrix; that he was the owner of the land in controversy, and that the same was sold by order of the probate court, which was duly approved, and a valid deed was made and delivered to him by the administratrix; that he bought the same under the proceedings of the probate court, which are in all respects valid and regular; that he paid a full and fair price for the land, made lasting improvements and paid taxes thereon; and that plaintiffs are estopped by their laches to complain of said sale.

The parties stipulated as to the correct description of the land, which comprised about fifty acres; and that the plaintiffs were the three children and the representatives of the fourth child of W. T. Thompson, deceased, and were all of his heirs.

It appears from the records and files of the probate court of Pemiscot county, that at its February term, 1901, the administratrix exhibited as a part of her petition to sell the land for the payment of debts, a settlement of her previous accounts as administratrix to that term of the probate court; that this settlement was signed, and sworn to, and approved by the court. The court then made an order of publication, which was thereafter published for four weeks, and continued the settlement of the administratrix,

which had been docketed to its February term, until the May term, 1901. At the latter term the court made an order for the sale of the land, after appraisement, at private sale. The land was appraised at $900; it was sold for $825 cash; and the administratrix made full report of her acts and doings touching these matters to the August term, 1901, of the probate court. Whereupon, her report was in all things confirmed, and a deed ordered to be made by her to the purchaser. This was done and shows on its face all the recitals required by law in such cases. In the subsequent final settlement of administratrix, the proceeds of this sale were credited to the estate.

Minnie Macklin, one of the plaintiffs and daughter of W. T. Thompson, testified, that she had been married for four years in 1907, the date of the trial; that she lived in Pemiscot county in 1901; that no paper pertaining to said real estate was served on her in that year. On cross-examination she stated: "Q. What is your husband's name? A. Wilber Macklin. . . . Q. Do you know how a sheriff serves a paper on a person? A. No, sir, I never saw a sheriff serve a paper. Q. Did anybody ever give you a paper of any sort or of any kind about that land? A. No, sir. Q. What was it about? A. If there was ever any given, I don't know of it. Q. You don't remember of it? A. No, sir."

Bertie Patrick, also one of the heirs of W. T. Thompson, testified that she was eighteen years of age in 1907 and had been married about one year; that no papers relating to an application to sell the land had been served on her in 1901 in Pemiscot county, where she had also lived. On cross-examination she stated: "Were all of you children minors in the year 1901? A. No, sir. Q. Who of you were adults? A. Horace and Otie. Q. Did you know when this land was to be sold? A. Yes, sir; I knew it was going to be sold. Q. Did you know your mother was

going to sell it to Mr. Pinnell? A. I knowed she was going to sell it, but not to whom. Q. Did you know what she was going to get for it? A. No, sir; but I heard her say she got $825 for it. . Q. You knew that she got $825 for it? A. I knew that she said she got it. I did not see the money.''

A. W. Thompson, one of the plaintiffs, testified that he was married at the time the land was sold by his mother, the administratrix; that no personal service of notice was made upon him by the then sheriff, McFarland. On cross-examination he further testified: ''Q. Did you know your mother was going to get an order of sale for this land? A. I knew she was talking of it. D. Did you object to her doing that? A. No, sir. Q. Were you willing at that (time) that she made that sale order? A. Well, I thought I had nothing to say. Q. You were of age were you not? A. Yes, sir. . . . Q. You do know when this land was sold your father's estate was considerably in debt, don't. you? A. It was in debt, some, yes, sir. Q. Were you here at the probate court with your mother when it sold? A. I was not here the day it sold, no, sir. Q. Were you here the day she got the order to sell it? A. I don't remember. Q. Don't you recollect you came with her the day she got the order? A. I came with her but I don't remember anything about the order. Q. Don't you know that as a rule you came with her when she came once a year to make her settlement? A. Some times, yes, sir. Q. You remember she tried to sell this land once, and that some mistake was made, and for that reason she didn't sell it at this particular time, but sold it at a later time? Don't you remember that? A. Yes, I know she came to sell and didn't sell. . . . Q. You say you had no objection to your mother selling this land?'' Objected to by counsel for plaintiff. Objection overruled. ''Q. You knew all about it? Yes, sir.''

Defendant offered to prove by McFarland, who was the sheriff of Pemiscot county in 1901, that he served process on the three surviving children of W. T. Thompson, and also on the deceased one, notifying them of the application for the sale of this land; that he had searched for his papers showing his returns of service and had been unable to find them because they were lost or destroyed; that he had returned them properly served ten days before the May term, 1901, of the probate court of Pemiscot county; that he had been paid for his services by the attorney for the administratrix. The court excluded this testimony. Defendant excepted. The court entered a decree divesting the title devolved upon defendant by the administratrix's deed, and adjudged the legal title to be in the present plaintiffs, subject to a lien of $441—a balance found to be due defendant upon the accounting. From this judgment the defendant perfected his appeal to this court.

## OPINION.

I. It is urged for appellant that the petition in this case does not state a cause of action. We cannot sanction that view. The owner of a legal title who is in possession, or the owner of an equitable title whether in possession or not, may, in either case, sue in equity to remove a cloud on his title to real estate whenever the deed, instrument or record creating the cloud is not void on its face, but resort must be had to extrinsic oral testimony to show that fact. [4 Pom. Eq. Jur. (3 Ed.), secs. 1396-1399; Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. l. c. 297; Mason v. Black, 87 Mo. 345; Harrington v. Utterback, 57 Mo. 519; Clark v. Ins. Co., 52 Mo. 272; Jewett v. Boardman, 181 Mo. 647.] These equitable principles have been supplemented and much expanded by the statutory remedies now set forth in section 2535, Revised Statutes 1909.

[Ball v. Woolfolk, 175 Mo. 278; Lane v. Dowd, 172 Mo. 167; Hudson v. Wright, 204 Mo. l. c. 423.]

In the case at bar the deed under which defendant claims title is not only regular and formal on its face but is *prima facie* evidence of all the recitals therein contained, including the order of sale made by the probate court, in pursuance of which it was executed. [R. S. 1909, sec. 176.] The validity of that order of sale is not impeached by anything appearing upon the records or contained in the files of the probate court. Therefore, if it is void, that fact is not apparent on the face of the record but must be shown by extrinsic oral testimony, proving the charge contained in plaintiffs' petition, that the order of sale was made without personal service of notice on the heirs resident in the county and hence without statutory authority. The case, therefore, falls within the general principles governing the power of courts of equity to remove a cloud on a title to real estate. The objection that the petition does not state a cause of action is untenable.

II. The next error assigned is the ruling of the court in excluding certain testimony proffered by defendant. In trials of equity cases the improper exclusion of competent evidence presents a wholly different question from the improper admission of incompetent evidence. An error in the latter respect constitutes no ground for reversing the judgment, for the reason that suits in equity are triable anew on appeal, and the appellate court can exclude from its consideration any inadmissible evidence contained in the record, and base its decree upon the preponderance of the competent evidence contained in the record. [Lacks v. Butler County Bank, 204 Mo. l. c. 479; Morrison v. Turnbaugh, 192 Mo. 427; Baxter v. Donnell, 69 Mo. App. l. c. 590; Hall v. Hall, 77 Mo. App. 606.] On the other hand, the exclusion from the record of competent testimony in a trial court is a grave error.

When that has been done we are deprived of the aid of that evidence upon a final review of the entire record in this court, and thus are compelled in many instances to remand the case at great expense and delay to the parties in order to obtain on retrial the competent evidence kept out of the record by the erroneous ruling. For these reasons the trial judges should permit a greater latitude of proof in .equitable than in legal actions, and should not exclude from the record any evidence which from any viewpoint could have any probative force as to the issues joined. The inconvenience and the error of a contrary action on the part of the trial court is glaringly illustrated in the present case, as will appear from a reference to the kind of testimony which was excluded over defendant's objection, and the particular issue upon which it bore.

The vital point in this suit was a solution of the question of fact as to personal service of notice upon the plaintiffs of the petition of the administratrix to sell their ancestor's land for the payment of debts of the estate. The heirs all lived in the county where the administration was conducted. They were, therefore, entitled by statute to be notified of the presentation of the petition for the sale of the land. [R. S. 1909, sec. 152.] Three of the plaintiffs were examined as to whether any personal service of notice was made upon them in 1901 as required by law. They answered, as shown in the foregoing statement, in a general negative way; somewhat modified on cross-examination. To disprove these statements, defendant proffered the testimony of the former sheriff of the county to prove, first, that diligent and unavailing search had been made for the papers showing a return of service of notices by him on all the plaintiffs or their representatives who lived in Pemiscot county, Missouri, in 1901; second, the contents, in substance, of the process served by him. The exclusion of the testimony of this witness was highly

prejudicial. It is always competent, after proof of the loss or destruction of judicial records, including writs and process, or after diligent and complete search has been made in the proper places without success to find such documents, to prove their contents by any secondary evidence where the case does not from its nature disclose the existence of other and better evidence. [1 Greenleaf on Evidence (16 Ed.), secs. 509 and 521.]

Under the facts stated in the petition in this case and shown on the trial, the defendant was entitled to adduce evidence disproving the testimony of the three plaintiffs tending to show that the sale made by the administratrix was without the notice to them required by law. The ruling of the court in excluding the testimony set out in the statement herein adduced by defendant for that purpose deprived him of that defense; and by keeping testimony on his behalf on that point out of the record deprived this court of the power to consider its probative force in determining the whole cause on appeal. This was necessarily reversible error. Defendant's objection to these rulings of the court was timely, and exceptions duly saved, and his assignment of error on that ground is sustained.

III. This disposition of this appeal renders it unnecessary to express our views on the proposition advanced in oral argument, that the order of sale was obtained by the administratrix at the time fixed by law for her annual settlement of the accounts, and, therefore, might be held valid without any showing either of publication or notice to the resident heirs. [R. S. 1909, sec. 174.] The reason the statute requires an administrator who at any time other than an annual settlement day presents a petition for the sale of lands to pay debts, to make publication and give notices thereof, is, that the right to sell may be contested by all the parties interested in the estate. The heirs, devisees

and legatees of estates are not required by law to be present in court or to take any cognizance of the conduct of the administration on days other than the term fixed for the annual settlements of the administration; wherefore, it is only right that they should be notified of such proceedings. [Hutchinson v. Shelley, 133 Mo. 400.] It is not entirely clear from the record in this case whether the order of sale made at the May term, 1901, of the probate court was coincident in point with the annual settlement of the administratrix. The record does afford some evidence to show that the order of sale was based upon a full inspection and consideration and approval of her settlements of her accounts as administratrix made under oath and submitted to the court as a part of the petition asking for the sale of the land, and that the court deemed the order of sale justified by the state of the accounts of the administratrix.

As the case must be reversed for other grounds, it is not necessary to determine in the present state of the record whether the order of sale made herein is validated under the statute authorizing such orders where it appears to the court upon a settlement of the accounts of the executor or administrator that the personal estate is not sufficient to pay the debts.

The judgment herein is reversed and the cause remanded for the reasons contained in paragraph II of this opinion. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BOND, C., is adopted as the opinion of the court. All the judges concur.