JETZ SERVICE COMPANY,
INC., Respondent,

v.

KC CITADEL APARTMENTS,
L.L.C., Defendant,

COINMACH CORPORATION,
Appellant.

No. WD 59696.

Missouri Court of Appeals,
Western District.

Oct. 16, 2001.

Rehearing Denied Dec. 4, 2001.

Stephen G. Mirakian, Kansas City, for appellant.

Robert B. Best, Jr., Anne Schoiavone, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., ELLIS, J., and TURNAGE, S.J.

WILLIAM E. TURNAGE, S.J.

Jetz Service Company, Inc. (Jetz) brought suit against CoinMach Corporation (CoinMach) to quiet title. Jetz and CoinMach are coin operated laundry machine businesses, and this dispute involves the possession and occupancy of the laundry rooms at the Citadel Apartments in Kansas City. Both parties filed a motion for summary judgment, and the trial court granted summary judgment in favor of Jetz. CoinMach appeals contending its lease was prior in time and superior to the lease under which Jetz claimed the right to occupy the premises.

Judgment reversed and cause remanded with directions.

In July 1994, Allied Laundry Equipment Company (Allied) entered into a ten-year laundry lease with John Hancock Mutual Life Insurance Company (John Hancock), the owner of the Citadel Apartments at the time, to possess the laundry rooms at the apartment complex. The lease included the following paragraphs:

10. *Binding on Successors and Assigns.* The lease and all of the covenants and agreements contained herein shall be binding upon the insure [sic] to the benefit of the Lessor and Lessee and their respective executors, administrators, successors, and assigns.

12. *Assignment or Subletting.* This lease is not assignable, nor shall said premises or any part thereof be sublet, used or permitted to be used without the written consent of the Lessor endorsed thereon; and if this lease is assigned or the premises or any part thereof is sublet without the written consent of the Lessor, or if the lessee shall become insolvent or bankrupt or make an assignment for the benefit of creditors, this lease shall by such fact or unauthorized act become void at the option of the Lessor. Any assignment of this lease or subletting of said premises or any part thereof with the written consent of the Lessor shall not operate to release the Lessee from the fulfillment on Lessee's part of the covenants and agreements herein contained to be by Lessee performed, not [sic] authorize any subsequent assignment or subletting without the written consent of the Lessor.

On April 1, 1996, CoinMach purchased the assets of Allied including the laundry lease with John Hancock. CoinMach immediately commenced occupancy and possession of the laundry rooms.

Three years later, on May 24, 1999, K.C. Citadel Apartments, L.L.C. (KCC) became the owner of the Citadel Apartments, subject to the terms and conditions of the laundry lease. Soon thereafter, on June

18, 1999, KCC informed CoinMach that it was exercising its option under the laundry lease to void the lease effective July 31, 1999, unless CoinMach could produce documentation showing that the lease was transferred or assigned to CoinMach with Lessor's approval. CoinMach produced no documentation and insisted that it had a valid and binding lease. On June 25, 1999, KCC entered into a laundry lease with Jetz granting Jetz the exclusive use and possession of the laundry rooms at the Citadel Apartments for its use as a laundry facility. The lease provided, "This lease agreement will only be valid if the lease agreement with the current vendor is properly terminated." KCC again requested CoinMach to remove its equipment by July 31, 1999. CoinMach refused, and Jetz filed its petition to quiet title.

Jetz filed a motion for summary judgment contending that its lease was superior to CoinMach's lease, which, Jetz claimed, had been declared void by KCC. Jetz argued that KCC exercised its option to void the CoinMach lease based on the assignment of the lease from Allied to CoinMach without the Lessor's approval. CoinMach responded to Jetz's motion for summary judgment and filed its own motion for summary judgment arguing that its lease was prior in time to Jetz's and was valid and binding. The trial court entered summary judgment in favor of Jetz. This appeal by CoinMach followed.

■ Appellate review of the grant of summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Because the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 380; Rule 74.04(c).

■ A suit to quiet title is a statutory action to determine respective estates, titles, and interests of several claimants to land. *Vanschoiack v. Adkins*, 854 S.W.2d 432, 435 (Mo.App. W.D.1993). Section 527.150 provides:

> Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such property.

§ 527.150.1, RSMo 2000. The statute is remedial in nature and is to be liberally construed. *Braun v. Petty*, 31 S.W.3d 521, 525 (Mo.App. E.D.2000). In an action to quiet title, the plaintiff has the burden to prove title superior to the other party. *Ollison v. Village of Climax Springs*, 916 S.W.2d 198, 203 (Mo. banc 1996); *Rodgers v. Threlkeld*, 22 S.W.3d 706, 709 (Mo.App. W.D.1999). A plaintiff must prevail on the strength of its own title and not on any weakness in the title of the other party. *Ollison*, 916 S.W.2d at 203; *Rodgers*, 22 S.W.3d at 709.

On appeal, CoinMach contends that the trial court erred in entering summary judgment in favor of Jetz. As the plaintiff in this action, Jetz had the burden to prove its interest was superior to CoinMach's. In its motion for summary judgment, Jetz alleged that its lease was superior to CoinMach's because CoinMach's lease had been properly terminated by KCC based on the assignment of the lease from Allied to CoinMach without the written approval of either John Hancock or KCC. In response to Jetz's motion for summary judgment and in its own motion for summary judgment, CoinMach argued that its lease was never properly terminated and, thus, was prior in time and superior to the lease under which Jetz claimed the right to occupy the premises.

A party seeking to terminate or rescind a contract must act promptly upon discovering the reason and need to rescind. *Gilmartin Bros., Inc. v. Kern*, 916 S.W.2d 324, 330 (Mo.App. E.D.1995). The rescinding party must act before the other party is placed in a position where it would be prejudiced by a rescission or termination. *Id.* In deciding whether rescission or termination was timely, the court must consider whether the non-rescinding party has been placed in a disadvantaged position by the delay. *Id.*

In *Gilmartin Brothers, Inc. v. Kern*, a home builder sued purchasers for breach of contract for construction of a residence, and the purchasers counterclaimed for rescission of the contract. *Id.* at 326. The new home sale contract included a provision that, in the event rock is encountered upon excavating or in the event of increased costs after the approval of the contract by seller, seller shall have the power to increase the sale price and purchasers shall have the option to pay such

increase or to cancel the contract. *Id.* at 328. Two weeks after construction began, the parties learned of difficulties with the sewer hookup, and the contract price was increased. Thereafter, the purchasers selected certain extras for the house. When excavation started a month later, the construction crew realized more work was required because of rock. Four months later when construction was almost complete, the staff installing the sewer encountered more rock, requiring additional labor and machinery. The purchasers were aware of all of the extra work and acquiesced to the changes. *Id.* at 330. Two days before closing, the purchasers attempted to exercise their option to cancel the contract based on the problems with the rock during excavation and the problems with the sewer hookup. *Id.*

The Eastern District held that the purchaser's attempt to rescind the contract was untimely under the circumstances. *Id.* The court explained that where the builder continued with construction over a period of months based on the purchasers' acquiescence and even added additional amenities at the purchasers' request, the builder was placed in a disadvantaged position by the delay of the purchasers in exercising their option to cancel. *Id.* The contract, therefore, was not properly rescinded and remained in full force and effect. *Id.* at 329–330.

As in *Gilmartin*, KCC's attempt to rescind or terminate CoinMach's lease was untimely. The undisputed material facts [1] showed that KCC attempted to terminate the lease under paragraph 12 of the lease, which gave the Lessor the option to void the lease upon its assignment without Lessor's written approval. The lease was assigned from Allied to CoinMach in April

---

1. The material facts were either jointly stipulated to by the parties or were not contradicted by Jetz in its response to CoinMach's motion for summary judgment.

1996. CoinMach immediately commenced occupancy and possession of the laundry rooms at the Citadel Apartments plainly marking its machines with its name. John Hancock, the Lessor at the time of the assignment, knew of the assignment but did not exercise its option under the lease to terminate the lease at that time.[2] KCC then became the owner of the Citadel Apartments in May 1999 subject to Coin-Mach's lease. CoinMach acquired an expectancy to occupy and possess the laundry rooms and to earn revenues for the remaining years of the lease as a result of John Hancock's decision not to timely terminate the lease after assignment. Termination of the lease by KCC nearly three years after the assignment would prejudice CoinMach by depriving it of the justifiable expectancy it acquired to occupy and possess the laundry rooms and to earn revenues for the remaining five years of the lease. John Hancock failed to act promptly to exercise its option to terminate the lease upon discovery of the reason to terminate. KCC was bound by John Hancock's inaction. The attempt to terminate the lease was, therefore, untimely under the circumstances placing CoinMach in a disadvantaged position by the delay. The CoinMach lease was not properly rescinded and remained in full force and effect.

Because CoinMach's lease was never properly terminated and was prior in time to Jetz's lease, CoinMach's lease was superior to Jetz's lease. Accordingly, CoinMach was entitled to judgment as a matter of law, and the trial court erred in entering summary judgment in favor of Jetz. The judgment of the trial court is reversed, and the case is remanded with directions to enter summary judgment in favor of Coin-Mach.

BRECKENRIDGE, P.J. and ELLIS, J., concur.

---

2. In support of its motion for summary judgment, CoinMach attached the affidavit of a CoinMach sales manager who had personal knowledge of the laundry room lease. The sales manager averred that John Hancock knew that CoinMach replaced Allied as the laundry company occupying the Citadel Apartments laundry rooms. In its response to CoinMach's motion and in this appeal, Jetz claimed that the affidavit did not establish John Hancock's knowledge regarding the assignment because under Rule 74.04(e), the affiant did not have personal knowledge of the fact and was not competent to testify to the matter. The statement of the sales manager, however, was not the only evidence regarding John Hancock's knowledge of the assignment. The undisputed facts showed that immediately after the assignment, CoinMach was in open and obvious possession of the laundry rooms at the Citadel Apartments. CoinMach's machines were plainly marked giving notice that it was the occupant of the laundry rooms. A reasonable inference from these facts is that John Hancock had knowledge of the assignment of the laundry lease to CoinMach "for the law presumes that every man knows the condition and status of his land." *See Whittom v. Alexander–Richardson P'ship,* 851 S.W.2d 504, 509 (Mo. banc 1993) (quoting *Boyce v. Mo. Pac. R.R.,* 168 Mo. 583, 68 S.W. 920, 922–923 (1902)).