**Rick ROBSON, Appellant,**

v.

**Bobbi Jo DIEM, et al., Respondents.**

**No. WD 71084.**

Missouri Court of Appeals,
Western District.

Aug. 24, 2010.

Steven M. Leigh and Beverly M. Weber, Kansas City, MO, and Shawn T. Briner, St. Louis, MO, for Appellant.

Ryan Edward Shaw and John T. Coghlan, Kansas City, MO, for Respondents Bobbi Jo Diem and Abdulhamid Zlitni.

Scott D. Mosier, Chesterfield, MO, for Respondent Countrywide Home Loans, Inc., and Federal National Mortgage Association.

Before Division II: JOSEPH M. ELLIS, Presiding Judge, and JAMES M. SMART, JR., and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Appellant Rick Robson appeals the trial court's grant of summary judgment in favor of Countrywide Home Loans, Inc.

("Countrywide") and Bobbi Jo Diem and Abdulhamid Zlitni (collectively, "the Diems"), and the denial of Robson's own motion for summary judgment. Robson's amended petition sought declaratory judgment quieting title to the property legally described as Lot 15 of Shelly Estates in Parkville, Missouri. The Diems filed a counterclaim against Robson seeking his ejectment and damages for trespass. We reverse the judgment of the trial court and remand for further proceedings.

**Factual and Procedural Background[1]**

Until late December, 2002, Thomas Walker and Katherine Walker ("the Walkers") owned two tracts of land located in Parkville, Platte County, Missouri. The tracts were legally described as:

TRACT I:

ALL OF LOT 20, SHELLY ESTATES, A SUBDIVISION OF LAND IN PLATTE COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF. ALSO A STRIP OF LAND IN THE SOUTHEAST QUARTER OF SECTION 21, TOWNSHIP 51, RANGE 34, PLATTE COUNTY, MISSOURI, BEING BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 20; THENCE SOUTH 11 DEGREES 25 MINUTES 09 SECONDS EAST ALONG THE EAST LINE OF SAID LOT 20, 255.45 FEET MEASURED 251.60 FEET (PLAT) TO THE SOUTHEAST CORNER OF SAID LOT 20; THENCE SOUTHWESTERLY ON A CURVE TO THE LEFT HAVING A RADIUS OF 67.07 FEET, AN ARC DISTANCE OF 92.31 FEET TO A POINT ON THE SOUTHWESTERLY LINE OF SAID LOT 20; THENCE NORTH 64 DEGREES 56 MINUTES 45 SECONDS WEST ALONG THE SOUTHWESTERLY LINE OF SAID LOT 20 AND ITS NORTHWESTERLY PROLONGATION THEREOF 367.73 FEET TO A POINT IN THE WEST LINE OF SAID SOUTHEAST QUARTER; THENCE NORTH 0 DEGREES 07 MINUTES 18 SECONDS WEST ALONG THE WEST LINE OF SAID SOUTHEAST QUARTER 79.04 FEET; THENCE NORTH 77 DEGREES 00 MINUTES 07 SECONDS EAST ALONG THE NORTH LINE OF SAID LOT 20 AND ITS WESTERLY PROLONGATION THEREOF 348.76 FEET TO THE POINT OF BEGINNING, EXCEPT ANY PART IN ROADS, IF ANY.

and

TRACT II:

ALL OF LOT 15, SHELLY ESTATES, A SUBDIVISION OF LAND IN PLATTE COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF. AND A TRACT OF LAND 30.0 FEET IN WIDTH LYING WEST OF AND ADJACENT TO LOT 15, SHELLY ESTATES, A SUBDIVISION OF LAND IN PLATTE COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF, BEING BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 15, THENCE SOUTH 0 DEGREES 07 MINUTES 18 SECONDS EAST ALONG THE WEST LINE OF

---

1. Because the trial court granted summary judgment, we review all facts in the light most favorable to the party against whom summary judgment was entered, in this case, Robson.

*See ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

SAID LOT 15, 314.72 FEET TO THE SOUTHWEST CORNER OF SAID LOT 15, THENCE SOUTH 77 DEGREES 07 MINUTES 7 SECONDS WEST 30.77 FEET TO A POINT IN THE WEST LINE OF THE SOUTHEAST QUARTER OF SECTION 21, TOWNSHIP 51, RANGE 34, PLATTE COUNTY, MISSOURI; THENCE NORTH 0 DEGREES 07 MINUTES 18 SECONDS WEST ALONG THE WEST LINE OF SAID SOUTHEAST QUARTER 321.86 FEET; THENCE SOUTH 89 DEGREES 34 MINUTES 54 SECONDS EAST 30.01 FEET TO THE POINT OF BEGINNING, EXCEPT ANY PART IN ROADS, IF ANY.

On December 3, 2002, the Walkers executed a real estate contract with Robson to sell Lot 15 to Robson. At the time, the lot was unimproved, and it was Robson's intention to build a residence on the lot.

On December 5, 2002, the Walkers executed a real estate contract with Sharla Johnson to sell Lot 20 to Johnson, which had an address of 12318 N.W. 65th Street, Parkville, Missouri. Lot 20 had been improved with a single-family residence, and Johnson paid a total of $235,000 to the Walkers. On December 23, 2002, at the closing of the sale to Johnson, the Walkers executed a warranty deed in order to convey Lot 20. The warranty deed, however, which was not prepared by the Walkers nor by Johnson, inadvertently included the legal property descriptions of both Lot 20 and Lot 15. On the same date, Johnson executed a deed of trust to First Magnus Financial Corporation ("First Magnus") to secure a loan of $223,000 that First Magnus made to Johnson so that she could purchase the property. The First Magnus deed of trust also mistakenly included the legal descriptions to both Lot 20 and Lot 15. Although both the Walkers and Johnson signed the documents required for the various transactions, both the Walkers and Johnson later stated in affidavits that they were unaware of the mistake in the legal descriptions and that their intention was that only Lot 20 be conveyed to Johnson. Johnson also stated that only Lot 20 was to be secured by the First Magnus deed of trust.[2]

On February 27, 2003, the Walkers executed and delivered to Robson a warranty deed conveying Lot 15 to Robson.

On September 8, 2003, a scrivener's affidavit was recorded attempting to correct the warranty deed from the Walkers to Johnson so that the legal description would include only Lot 20. The scrivener's affidavit was executed by Annette F. Elms, an employee of Premiere Land Title, who was the trustee to First Magnus under the deed of trust Johnson executed with First Magnus.[3]

On approximately November 30, 2003, Robson began constructing a residence on Lot 15. No one requested Robson to quit

---

**2.** There is no evidence in the record that Johnson's loan agreement with First Magnus depended upon security of any property other than Lot 20. Although the record does not contain Johnson's loan agreement, there is no claim by either First Magnus or Countrywide as its successor that Lot 20 was not of sufficient value by itself to secure Johnson's loan from First Magnus.

**3.** Because Premier Land Title was trustee to First Magnus, there are issues as to whether First Magnus was thus on notice of the mistake in the Johnson deeds and as to whether Elms's acknowledgment of the mistake had any binding effect on First Magnus as to the scope of its security interest in Lot 15. The parties do not address the legal effects of the fact that a Premier Land Title employee completed the scrivener's affidavit, or whether Elms was acting in her capacity as trustee or as an employee of the title company, and we need not decide those issues here.

possession of Lot 15 claiming an interest in the property. The Robson residence now has as its address 12315 N.W. 66th Street, Parkville, Missouri.

Johnson ultimately defaulted on her loan and on May 5, 2004, Millsap & Singer, P.C., as successor trustee under the First Magnus deed of trust, foreclosed on the First Magnus deed of trust.[4] Only Johnson was given notice of the foreclosure sale. The foreclosure sale resulted in a successor trustee's deed, which contained the same erroneous legal description (including both Lot 15 and Lot 20), to Federal National Mortgage Association ("FNMA"), the successful purchaser.

On August 5, 2004, FNMA executed a special warranty deed to the Diems. This deed contained the legal descriptions of both Lot 20 and Lot 15, but only listed the address of Lot 20.[5] On October 19, 2005, the Diems executed a deed of trust to Home Loan Center, Inc., d/b/a Lending Tree Loans ("Home Loan Center") to secure the repayment of $228,000. This deed of trust was recorded on November 9, 2005. The Home Loan Center deed of trust contains the legal description of both Lot 20 and Lot 15, although it again lists only the address of Lot 20. On January 25, 2006, the Diems executed a "second mortgage" deed of trust to First Horizon Home Loan Corporation to secure a note for $28,500. This deed of trust also lists as the "property address" the address of Lot 20, and includes the legal descriptions of both Lot 15 and Lot 20.

On April 25, 2008, Robson filed his first amended petition to quiet title pursuant to section 527.150, RSMo 2000,[6] and for unjust enrichment/compensation for improvements.[7] Countrywide, successor to First Magnus, raised as affirmative defenses that Robson lacked standing to seek the relief he requested and that he was estopped from contesting title to Lot 15 because he was on notice as of February 27, 2003, the date the Johnson deed was executed and recorded, that Lot 15 had already been conveyed to Johnson. The Diems raised as an affirmative defense that they were bona fide purchasers of Lot 15. Robson, the Diems, and Countrywide submitted cross-motions for summary judgment to the trial court.

On May 18, 2009, the trial court granted Countrywide's motion for summary judgment, finding that Robson has no interest in Lot 15 and that the Diems are the record owners of Lot 15. The trial court also granted summary judgment to the Diems on their claim for ejectment against Robson. The trial court denied Robson's motion for summary judgment. Robson appeals.

## Standard of Review

■ This court's review of the trial court's grant of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria for testing the propriety of summary judgment are the same as those which the trial court should use to determine whether the motion for summary

---

**4.** By this time, Countrywide Home Loans, Inc. ("Countrywide") had succeeded First Magnus as the holder of Johnson's note and deed of trust.

**5.** On this same date, the Diems executed a deed of trust to the trustee for Bank of Blue Valley, assignor to Wells Fargo, to secure a

repayment of $179,900. This loan has been repaid and the lien released.

**6.** All statutory references are to RSMo 2000 unless otherwise noted.

**7.** Robson's original petition was filed on March 1, 2006.

judgment should be sustained initially. *Id.* Initially, the defendants to Robson's quiet title action could have shown that they were entitled to summary judgment if they had shown: (1) facts negating any element of Robson's quiet title action; (2) that Robson, after an adequate period of discovery, would have been unable to produce evidence sufficient to establish any of the elements of his quiet title action; or (3) that there was no dispute as to any facts necessary to support one of the defendants' properly pleaded affirmative defenses. *See Shifflette v. Mo. Dep't of Natural Res.,* 308 S.W.3d 331, 333 (Mo.App. W.D. 2010). The propriety of summary judgment is a matter of law, and as such we do not defer to the trial court's order granting summary judgment. *ITT,* 854 S.W.2d at 376. We review the record in the light most favorable to the party against whom summary judgment was entered, according him the benefit of all reasonable inferences from the record. *Shifflette,* 308 S.W.3d at 333.

▮ Robson also appeals the trial court's denial of his motion for summary judgment. "Generally, an order denying a motion for summary judgment is not a final judgment and therefore is not reviewable on appeal." *Stone v. Crown Diversified Indus. Corp.,* 9 S.W.3d 659, 664 (Mo. App. E.D.2000). In some cases, however, the denial of a motion for summary judgment is reviewable, because "the merits of [the] motion are intertwined with the propriety of an appealable order granting summary judgment to another party." *Id.* Robson claims that this is such a case.

### Legal Analysis

Robson's first point on appeal is that the trial court erred in excluding extrinsic evidence that established the superiority of his title to that of either Countrywide or the Diems. Specifically, Robson argues that he should have been permitted to present evidence establishing: (1) his equitable title; and (2) that the legal title that passed to Countrywide, as successor to First Magnus, through foreclosure on the loan made to Johnson, was based upon mutual mistake in the recording of the Johnson warranty deed and the First Magnus deed of trust.

▮ A suit to quiet title, such as that filed by Robson, is a statutory action, and it is an appropriate means to determine the respective estates, titles, and interests of multiple people claiming an interest in land. *Jetz Serv. Co. v. K.C. Citadel Apartments, L.L.C.,* 59 S.W.3d 527, 529 (Mo. App. W.D.2001). Section 527.150.1 provides:

Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property.

"The statute is remedial in nature and is to be liberally construed." *Jetz,* 59 S.W.3d at 529. In quiet title actions, the burden of establishing superior title is on the party bringing the action, and he must "prevail on the strength of [his] own title and not on any weakness in the title of the other party." *Id.* Robson, therefore, first needed to establish his equitable title in order to prevail. " '[E]quitable title is the right in the party to whom such title belongs to have the legal title transferred to him upon

the performance of a specified condition.'" *Carolan v. Nelson,* 226 S.W.3d 923, 926 (Mo.App. W.D.2007) (quoting *Reinhold v. Fee Fee Trunk Sewer, Inc.,* 664 S.W.2d 599, 603 (Mo.App. E.D.1984)). A person who enters into a contract for sale of a piece of real property with the legal owner of the property acquires equitable title. *Allied Pools, Inc. v. Sowash,* 735 S.W.2d 421, 424 (Mo.App. W.D.1987); *see also Bath v. Bath,* 233 S.W.3d 742, 743 (Mo. App. S.D.2007).[8] Because Robson entered into a contract, which he incorporated into his petition by reference, to purchase Lot 15 from the Walkers on December 3, 2002, and because the Walkers owned the property on the date of the contract, Robson alleged equitable title from that date.

■■■ When a party, such as Robson, has alleged that he has equitable title, he may, in a quiet title action, present extrinsic evidence to prove that title and to establish that his title is superior to that of other parties. *See* § 527.150; *Thompson v. Pinnell,* 237 Mo. 545, 141 S.W. 605, 606–07 (1911); *Mason v. Black,* 87 Mo. 329, 345 (1885); *Harrington v. Utterback,* 57 Mo. 519, 520 (1874). Robson attempted to present such evidence to the trial court, by attaching to his amended petition items including: (1) the Johnson Warranty deed; (2) the First Magnus Deed of Trust; (3) the scrivener's affidavit, attempting to correct the mistaken property descriptions found in the aforementioned deeds; (4) the real estate contract between the Walkers and Johnson for the sale of Lot 20; (5) the Robson warranty deed; (6) the real estate contract between the Walkers and Robson for the sale of Lot 15; and (7) various deeds recorded by or on behalf of the Diems.

The evidence Robson offered is relevant to establishing his equitable title. Robson contends that the evidence he attempted to introduce with his motion for summary judgment would also have shown the mutual mistake in the recording of the Johnson warranty deed and the First Magnus deed of trust and would have supported his claim that he, and not Johnson, actually owned Lot 15 prior to the foreclosure sale. Robson contends that the proffered evidence would have shown that Lot 15 was never properly offered as security for Johnson's loan from First Magnus. Countrywide, successor to First Magnus, counters that because the chain of title, as reflected by the recorded deeds and deeds of trust, is clear and unambiguous, the extrinsic evidence was properly excluded.

■■■ As Countrywide points out, a *party* to a deed cannot use parol evidence to controvert the language used in the deed if that language is clear and unambiguous. *Ethridge v. TierOne Bank,* 226 S.W.3d 127, 131 (Mo. banc 2007). However, Robson is not a party to the allegedly mistaken deeds in this case. "The rule excluding extrinsic evidence sought to be introduced for the purpose of affecting a written instrument is applied only where the controversy is *between the parties* to the instrument or to their privies." *Am. Bank v. Wegener,* 776 S.W.2d 922, 925 (Mo.App. W.D.1989) (emphasis added). A

---

8. Typically, when a sale for a piece of land closes, the buyer tenders the purchase price to the seller and the seller executes a deed in favor of the buyer, which is then recorded. When the buyer accepts the deed from the owner of the property, he obtains legal title to the property. In this case, Robson never obtained the legal title to Lot 15 because the Walkers had already mistakenly deeded the property to Johnson. Robson is not proceeding here under the warranty deed he received from the Walkers, nor is he proceeding under a claim of equitable lien which he may have received from paying the purchase price of Lot 15 to the Walkers. Robson does not seek money damages, but he wants the title to Lot 15 free and clear.

third party seeking to challenge the validity of a seemingly unambiguous instrument may present extrinsic evidence to prove his case. *Burk v. Walton,* 337 Mo. 781, 86 S.W.2d 92, 96 (1935). The rule excluding such evidence

> "cannot affect third persons, who, if it were otherwise, might be prejudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statements of others."

*Id.* (quoting 1 Greenleaf on Evidence § 279 (16th ed.)).[9]

▪ Moreover, when there is clear evidence of fraud or mistake, even *parties* to the deed may introduce parol evidence to effect reformation of the defective deed. *Ethridge,* 226 S.W.3d at 132. While Robson is not a party to the mistaken deeds covering Lot 15, and thus may not have standing to seek reformation, we find the applicable law relevant to the court's consideration in this instance. To establish that reformation is appropriate in cases where a scrivener's error is alleged, the party seeking reformation must show, by "clear and convincing evidence": (1) a preexisting agreement between the parties; (2) a scrivener's mistake in drafting the agreement; and (3) that the mistake was mutual as between the grantors and the grantees. *Id.*[10] While Missouri courts have fairly consistently stressed the need to look solely to the language of the document to determine the intent of the parties, when deciding whether reformation of a deed containing a mistake is proper, the courts have, by necessity, looked at extrinsic or parol evidence. *See, e.g., id.* at 129 (court considered that only husband signed a note and considered wife's testimony as to circumstances surrounding closing); *Church v. Combs,* 332 Mo. 334, 58 S.W.2d 467, 469 (1933) (court considered that wife did not contribute to purchase price of property and considered testimony of notary preparing the deed as to circumstances surrounding closing).

▪ All of the evidence that Robson attempted to introduce supports his claim of mistake in the legal descriptions of property contained in the Johnson deed and the First Magnus warranty deed, which would tend to support his claim that his title was superior to that of either Johnson or First Magnus (or Countrywide as successor). We therefore agree with Robson that the trial court's exclusion of Robson's extrinsic evidence was in error.[11]

---

9. *See also Cordes v. Straszer,* 8 Mo.App. 61 (1879) (rule never intended to apply to third parties). Similarly, parties to an instrument may present parol evidence *against* a third party making a claim. *Nieman v. First Nat'l Bank of Joplin,* 420 S.W.2d 20, 22 (Mo.App. 1967).

10. Even if the mistake is unilateral, if there is inequitable conduct by the other party, such as if the other party knows of the mistake but keeps silent, reformation may be proper. 14 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 81A.07[3][b](4) (Michael Allan Wolf, ed.2010). *See also Gierhart v. Consol. Rail Corp.–Conrail,* 656 N.E.2d 285, 287 (Ind.Ct. App.1995).

11. Of course, to succeed at trial, Robson would also have to prove that his title is superior to that of the Diems, who claim to be bona fide purchasers. The Diems are correct that they would have an affirmative defense to Robson's quiet title action if they were bona fide purchasers. A bona fide purchaser, however, must take title without notice of the other party's claim of title to the land and must purchase for value. *Jackson v. Klein,* 320 S.W.2d 553, 556 (Mo.1959). There appear to be factual issues as to whether Robson's possession of Lot 15 should have put the Diems on notice of his potential interest in Lot 15 and as to whether the value the Diems paid is sufficient consideration to support their claim of being bona fide purchasers of

Robson's second point on appeal is that the trial court erred in granting summary judgment in favor of Countrywide and in denying Robson's motion for summary judgment in that the trial court erroneously determined that Robson was not an owner of record of Lot 15 and therefore not entitled to notice of the foreclosure sale. Section 443.325 requires notice of a foreclosure sale to be sent to "the person shown by the records in the office of the recorder of deeds to be the owner of the property as of forty days prior to the scheduled date of foreclosure sale." Robson's contention is that, since the statute does not define the word "owner," it is subject to more than one meaning, and so the purpose of the statute must be considered in determining the meaning of the word "owner" as it appears in the statute. Countrywide claims, on the contrary, that the statute does define "owner," or at least instructs as to how one is to determine who the owner might be. It further contends that only Johnson was shown "by the records in the office of the recorder of deeds" to be the owner of both Lot 15 and Lot 20 and, therefore that she was the only person entitled to notice of the foreclosure sale.

We agree that section 443.325 instructs one attempting to effect a foreclosure sale for any piece of real property as to how to determine the owner of the property who is entitled to notice. Clearly the records in the office of the recorder of deeds are to be consulted to determine the

"owner" of the property for this purpose. § 443.325.3(2). However, the fact that Robson's interest might not be discovered during a search in the county's grantee-grantor index does not necessarily end the inquiry. The Supreme Court of Missouri, en banc, has declared that the "owner" of real property, under this very statute, should be "broadly" construed "to include 'any person beneficially interested in [the] property.'" *Williams v. Kimes,* 949 S.W.2d 899, 900 (Mo. banc 1997) (quoting *Siemer v. Schuermann Bldg. & Realty Co.,* 381 S.W.2d 821, 826 (Mo.1964)). One reason for the broad construction of the term "owner" under this statute is to ensure that all people with a beneficial interest in the property are afforded an opportunity to protect that interest. Also, foreclosure sales under this statute and a power of sale are sales conducted without a court order and, as such, are scrutinized "very closely" for irregularities. *Mercantile Bank v. Keith (In re Keith)*, 211 B.R. 355, 358 (Bankr.W.D.Mo.1997). In cases where the questionability of ownership creates a practical concern in providing notice of foreclosure sale, the Missouri Supreme Court recommends judicial foreclosure. *Williams,* 949 S.W.2d at 900–01.

In this case, an examination of the records in the office of the recorder of deeds might have yielded evidence of the warranty deed to Johnson, the warranty deed to Robson, the scrivener's affidavit, and the First Magnus deed of trust.[12] More importantly, Robson had possession of Lot 15

---

*both* Lots 15 and 20. *See* 14 POWELL, supra n. 10, at § 81A.04(1)(v). The trial court, however, did not consider any affirmative defenses, or whether any factual issues remain pertaining to those defenses, having granted summary judgment solely on its finding that Robson lacked any title to Lot 15. Therefore, the Diems' affirmative defense is not before this court.

12. While the Robson warranty deed and the scrivener's affidavit are outside the chain of title, title searches can sometimes be done by tract, and not only by chain of title, so it is not impossible that they would be found during a title search. Indeed, the final title policy issued to the Diems is for only Lot 20, indicating that the title company issuing the policy was aware of some issues as to the title of Lot 15.

at the time of the foreclosure. Robson claims that the records on file and Robson's possession are sufficient to have put Millsap & Singer, P.C., as successor trustee, on notice that Robson claimed some ownership interest in Lot 15. *See also* 14 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 82.02[1][d](iii)(A) (Michael Allan Wolf, ed.2010) (possession of property by person other than record owner provides notice of his potential interest in the property). Therefore, he contends that Millsap & Singer should have either provided Robson notice of the sale or sought judicial foreclosure. The only notice of the sale in this case was sent to Johnson at her (Lot 20) address. No notice was sent to Robson.

Countrywide counters that Robson should have requested notice under section 443.325.1, which provides that

> [a]ny person desiring notice of sale under any deed of trust or mortgage with power of sale upon real property may, at any time subsequent to recordation of such deed of trust or mortgage, cause to be filed for record in the office of the recorder of each county in which any part or parcel of the real property is situated a duly acknowledged request for such notice of sale.

While Robson certainly could have requested notice of sale pursuant to this portion of the statute, it is unclear whether Robson had any reason to know that First Magnus, or Countrywide as its successor, claimed any security interest on Lot 15 more than forty days prior to the sale, the time before which all requests for notice under section 443.325.1 must be made. Johnson and the Walkers both apparently have always acknowledged that Lot 15 was never intended to have been offered to secure Johnson's loan to First Magnus, and Robson could have believed the mistake to have been corrected by the scrivener's affidavit filed and recorded earlier. If Robson had been aware that Johnson's lender claimed a security interest in Lot 15, he would have been wise to request notice of foreclosure sale pursuant to section 443.325.1. However, we find that there is at least a factual issue as to whether this was the case, which would make summary judgment inappropriate. Moreover, the facts as alleged by Robson indicate that notice should arguably have been provided to Robson under section 443.325.3(2). If Robson is correct, the failure of the trustee to notify Robson under this provision would itself be enough to invalidate the foreclosure sale. *Williams,* 949 S.W.2d at 901. Because there are genuine issues of fact pertaining to Robson's entitlement to notice under section 443.325.3(2), summary judgment was inappropriate.

Robson's third point on appeal is that the trial court erred in denying Robson's motion for summary judgment in that his title is superior to that of Countrywide and the Diems. Generally, the court of appeals does not review the denial of a motion for summary judgment by the trial court because such an order is not a final judgment on which an appeal may be taken. *Stone,* 9 S.W.3d at 664. This is so even when the appeal arises from a final judgment in a case, such as the trial court's grant of a summary judgment, unless the merits of the competing motions are so intertwined as to make such review appropriate. *Id.* We do not feel that the trial court's denial of Robson's motion for summary judgment in this case is appropriate for review by this court. The trial court did not admit Robson's proffered extrinsic evidence, and thus it was never considered. We also find, as mentioned above, that factual issues exist as to what Robson, First Magnus and its successors and trustees, and the Diems knew or should have known about the condition of

the title to Lot 15. Accordingly, this court's entry of summary judgment for Robson would be inappropriate.

### Conclusion

For all of the above reasons, we reverse the judgment of the trial court to the extent that it grants summary judgment to any party and remand the case for trial.

JOSEPH M. ELLIS, Presiding Judge, and JAMES M. SMART, JR., Judge, concur.