**HALE & HALE, LTD., and Dakota J. Hale, Individually, Respondent,**

v.

**The ARNOLD AND JEANIE PETTIT DECLARATION OF TRUST DATED 2/1/95, Arnold and Jeanie Pettit, Appellants.**

**No. WD 69872.**

Missouri Court of Appeals,
Western District.

Sept. 15, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 2009.

Application for Transfer Denied
Dec. 22, 2009.

James L. Guthrie, Jr., Nevada, MO, for Appellants.

David Slaby, St. Louis, MO, for Respondent.

Before: THOMAS H. NEWTON, C.J., JAMES EDWARD WELSH, and KAREN KING MITCHELL, JJ.

THOMAS H. NEWTON, Chief Judge.

Mr. Arnold and Mrs. Jeanie Pettit appeal the trial court's judgment awarding Hale & Hale Ltd. a real estate commission on the sale of the Pettit's property and attorney fees. Hale & Hale sued Mr. and Mrs. Pettit after they refused to pay it a real estate commission on property that Mr. Pettit had listed exclusively with Hale & Hale Ltd. We affirm and remand for a determination of reasonable attorney fees on appeal.

### Factual and Procedural Background

On July 8, 2005, Mr. Pettit signed an exclusive listing agreement employing Hale & Hale Ltd. "to procure a purchaser ready, willing, and able to buy" his farmhouse and the surrounding 160 acres of

farmland for $208,000; Mr. Pettit did not reserve the right to sell the property. The agreement provided that Hale & Hale would receive a six percent commission if it procured a ready, willing, and able buyer at the stated price and terms or any price and terms acceptable to Mr. Pettit before January 15, 2006. Mrs. Linda Hale, a licensed broker for Hale & Hale, advertised the property, and Mr. Dakota Hale (Cody), her son and a licensed salesperson for Hale & Hale, showed the property to prospective buyers.

In September 2005, Cody called Mr. Pettit and told him a prospective buyer had signed a contract to purchase the property for $208,000 (hereinafter "offer"). The prospective buyer had also submitted an earnest money deposit. A day before the offer was signed, Mr. Pettit had signed a seller's disclosure statement identifying the gas system as a propane tank but did not indicate whether the tank was owned or leased. Cody asked Mr. Pettit to meet with him to view the offer. Mr. Pettit refused the offer without viewing it and did not submit a counter offer. Cody called again and spoke with Mrs. Pettit, who informed him that she and her husband were not selling the property for $208,000. Mr. Larry Hale, Cody's father and a broker for Hale & Hale, then called and spoke with Mr. Pettit who again refused to sell the property. Mr. Hale told Mr. Pettit that he would be responsible for the commission if he did not sell the property because Hale & Hale had produced a "full price offer." Mr. Pettit responded that he did not have to pay Hale & Hale a commission because his wife had not signed the agreement.

On January 30, 2006, the Pettits sold the property for $218,500. Subsequently, Hale & Hale sent a certified letter demanding its commission. The Pettits did not accept the certified letter. On July 28, 2006, Hale & Hale sued the Pettits for breach of contract, seeking a commission plus interest and attorney fees and costs. During discovery, Hale & Hale learned that the property was owned by "the Arnold and Jeanie Pettit Declaration of Trust dated 2/1/95" (Trust) and that the signature of Mr. or Mrs. Pettit could bind the other as co-trustees. Mr. Pettit failed to disclose his trustee status on the exclusive listing agreement. Hale & Hale amended the petition to include the Pettits in their trustee capacities and the Trust as defendants. Additionally, the amended petition included Cody as a plaintiff.

At trial, Hale & Hale adduced testimony from Mr. Hale, Mrs. Hale, and Cody. In addition to the above facts, Mr. Hale testified that he, Mrs. Hale, and their company Hale & Hale were current licensed brokers. He also testified that his son Cody was duly licensed as a salesperson for Hale & Hale. Photocopies of their current licenses were admitted into evidence over the Pettits' objection. Additionally, Hale & Hale offered the exclusive listing agreement, the seller's disclosure, the offer, and the Pettits' contract for sale. The exclusive listing agreement, the seller's disclosure, and the offer were admitted over the Pettits' objections.

At the end of the plaintiffs' case, the Pettits moved for a directed verdict on the grounds that Hale & Hale failed to prove it was a corporation in good standing, failed to prove it was a licensed broker, and failed to provide adequate proof that the buyer was ready, willing, and able to purchase. The trial court denied the motion. Mr. Pettit then testified that he did not know the listing agreement was exclusive when he signed it because he and Mr. Hale discussed reserving Mr. Pettit's right to sell the property free of commission. The Pettits testified that Mr. Pettit called Mr. Hale to modify the purchase price

from $208,000 to $230,000. Additionally, they testified that a counter offer was made when Cody presented the offer for $208,000. The Pettits also presented testimony that the propane tank on the property had separate value and was excluded from the sale of the real property.

At the end of the trial, the court found in Hale & Hale's favor. It awarded Hale & Hale a commission of $12,480 plus interest and attorney fees of $4,000 and costs against the Pettits as individuals and as trustees, "each individually and jointly and severally." The Pettits appeal and raise six points.

### Standard of Review

We review a court-tried case under the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 645 (Mo.App. W.D.2002). Thus, we affirm the trial court's decision unless it is not supported by the record, is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

### Legal Analysis

In their first point, the Pettits argue that the trial court erroneously admitted the photocopied real estate licenses to prove Hale & Hale, its brokers, and salesperson were licensed, because they were not the "best evidence" and the Missouri Real Estate Commission had not certified them. They further argue that the photocopied licenses are invalid because they violate the best evidence rule, and absent valid licenses, there was no substantial evidence to support licensure, as is statutorily required to be entitled to commission. In their second point, the Pettits argue that even if the photocopied licenses were properly admitted, the trial court's deci-

sion to award commission is not supported by substantial evidence because the photocopied licenses do not show that Hale & Hale, its brokers, and its salesperson were validly licensed at the time they rendered services under the exclusive listing agreement. We address these two points together.

Under section 339.160,[1] a person or corporation acting as a real estate broker or salesperson cannot maintain an action to recover compensation for their services unless the person or corporation alleges and proves that they were a "licensed real estate broker or salesperson at the time when the alleged cause of action arose." Thus, to be entitled to a commission, the plaintiff must plead and prove that it was a licensed real estate broker "at the time he performed the real estate broker's services for which he seeks to be compensated." *Sandbothe v. Williams*, 552 S.W.2d 251, 255 (Mo.App.1977). A salesperson who seeks commission must prove that he or she was licensed and worked with a licensed broker when performing the services for which he or she seeks compensation. *Schoene v. Hickam*, 397 S.W.2d 596, 601 (Mo.1965).

The best evidence rule requires the original document be submitted to prove operative terms or content that are at issue. *Boroughf v. Bank of Am., N.A.*, 159 S.W.3d 498, 503 (Mo.App. S.D.2005). However, the rule is inapplicable to writings in which the content of the writing is not at issue. *See State v. Souders*, 703 S.W.2d 909, 911 (Mo.App. E.D.1985) (finding best evidence rule was not violated when the court found ownership based on unchallenged testimony rather than the actual car title). A trial court has broad discretion in applying the best evidence rule. *Boroughf,* 159 S.W.3d at 503. Here,

1. RSMo 2000 and Cumulative Supplement 2009.

the Pettits objected to the admission of photocopied licenses rather than the originals but did not challenge the content of those copies. Thus, the trial court did not abuse its discretion in admitting the photocopied licenses because the content was not at issue.

■ However, the Pettits are correct that these photocopied licenses only showed licensure at the time of trial. The Missouri Real Estate Commission has promulgated rules and regulations that licenses must be renewed in each even-numbered year. Mo.Code Regs. Ann. tit, 20 § 2250–4.020(1)(A), (B) (2009). "Any licensee who fails to renew during a subsequent renewal period is no longer licensed.... Until a new license is procured, the holder of an expired license shall not perform any act for which a license is required." *Id.* at § 2250–4.020(2). The licenses admitted into evidence indicate that the licenses were only valid until 2008. Based on the regulation, those licenses were either obtained in 2006 or renewed in 2006. Hale & Hale sought compensation for work performed between July 2005 and September 2005. Thus, the licenses did not show that Hale & Hale, its salesperson, or its brokers were licensed during the time it performed services to the Pettits.

Nevertheless, the statute does not specify the proof required to show that a person or corporation was licensed at the time they rendered services entitling them to commission. As stated earlier, the statute simply requires that the person or corporation allege and prove they were either a "licensed real estate broker or salesperson at the time when the alleged cause of action arose." § 339.160. Precedent suggests that testimony indicating that the salesperson or broker was licensed when rendering services to the defendant is sufficient proof of the statutorily required licensure. *See CB Commercial Real Es-*

*tate Group, Inc. v. Equity P'ships Corp.,* 917 S.W.2d 641, 644–45 (Mo.App. W.D. 1996) (corporate broker adducing testimonial evidence that it was a licensed broker); *see also Sandbothe,* 552 S.W.2d at 252 (broker stipulating to period that license was valid).

Mr. Hale testified that he had maintained his broker-officer license since 1978. He also testified that Hale & Hale's corporate broker license, Mrs. Hale's broker-officer license, and Cody's salesperson license were all current. Cody testified that he was licensed as a salesperson for Hale & Hale in February 2005. It was reasonable for the trial court to infer from this evidence that Hale & Hale and Mrs. Hale were also licensed in 2005. *See Turner v. Shalberg,* 70 S.W.3d 653, 657–58 (Mo.App. S.D.2002) ("We review the evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable inferences, disregarding the contrary evidence and inferences."). The Pettits' first and second points are denied.

■ In their third point, the Pettits argue that the trial court's decision to enter judgment against Mrs. Pettit in her individual capacity is not supported by substantial evidence because she was not a signatory to the exclusive listing agreement and no evidence supports a finding that Mr. Pettit acted as her agent. A trustee is not personally liable for breach of "a contract that was properly entered into in the trustee's fiduciary capacity in the course of administering the trust if the trustee in the contract disclosed his fiduciary capacity," unless the contract provides otherwise. § 456.10–1010.1. Mr. Pettit did not disclose his trustee status to Hale & Hale. Thus, he is personally liable on the contract. Because there is a trust provision allowing a signatory trustee to bind a non-signatory trustee, Mrs. Pettit was liable on the contract as a trustee.

However, Mrs. Pettit did not sign the contract, and the evidence does not show her knowledge of Mr. Pettit's failure to disclose his trustee status. Thus, the question becomes whether she and Mr. Pettit were in an agency relationship concerning the property.

A marital relationship does not automatically create an agency relationship. *Luttrell*, 67 S.W.3d at 647. Rather, "[a] spouse cloaks the other with apparent authority to act on his or her behalf if the facts and circumstances surrounding the transaction give rise to a reasonable and logical inference that the non-acting spouse empowered the acting spouse to act for him or her." *Id.* (internal quotation marks and citation omitted). Thus, an agency may be found where the third party shows participation by the non-signatory. *Branson Land Co. v. Guilliams*, 926 S.W.2d 524, 528 n. 2 (Mo.App. S.D.1996). Whether a husband and wife were agents of each other is a question of fact. *See Mo. Farmer's Ass'n v. Busse*, 767 S.W.2d 108, 110 (Mo.App. E.D.1989).

Here, the trial court found Mr. Pettit was Mrs. Pettit's agent because Mrs. Pettit knew that Hale & Hale was trying to sell the property and she actively participated. Mrs. Pettit relayed messages to her husband from Cody on several occasions. Mrs. Pettit testified that she agreed to Hale & Hale selling the property but did not agree to the listing price. She also testified that after Cody called again trying to persuade Mr. Pettit to take the offer, she volunteered that she and Mr. Pettit could not accept the offer. Under these circumstances, Mrs. Pettit's interaction with Cody and her testimony support the finding that Mr. Pettit was acting as her agent when he contracted with Hale & Hale to sell the property. Accordingly, the Pettits' third point is denied.

In their fourth point, the Pettits argue that the trial court erred in admitting the exclusive listing agreement, the seller's disclosure statement, and the real estate offer into evidence because those documents were the products of unlawful practice of the law. Relying on *Hulse v. Criger*, 363 Mo. 26, 247 S.W.2d 855, 862 (1952), the Pettits claim that the documents were unlawful because they were not preapproved forms by a trade association and no evidence was presented that an attorney had prepared them. *Criger* precludes real estate brokers from preparing legal documents to effect the purchase or sale of property under certain circumstances. *Id.* at 862–63. *Criger* is inapposite because no transaction occurred here; Hale & Hale's recovery was based on procuring a buyer rather than selling the property. Accordingly, the trial court did not abuse its discretion in admitting these documents into evidence. The Pettits' fourth point is denied.

In their fifth point, the Pettits argue that the trial court erred in awarding a commission to Hale & Hale because there was no substantial evidence to support a finding that Hale & Hale produced a ready, willing, and able buyer. A broker is entitled to commission based on the terms of the listing agreement. *Alcorn v. Moore*, 386 S.W.2d 907, 911 (Mo.App.1965). According to the exclusive listing agreement, Hale & Hale was entitled to a commission if it procured a buyer ready, willing, and able to buy the property at the stated price and terms, or any other price and terms acceptable to Mr. Pettit. A buyer who makes an offer below the stated price is not a "ready" and "willing" buyer. *See id.* at 911–12.

The Pettits argue that Hale & Hale presented an offer less than the listing price of $208,000 because the offer included the propane tank, which was not

included in the property description on the exclusive listing agreement. Hale & Hale presented evidence that it procured a buyer ready and willing to pay $208,000 for the listed property. The propane tank was not excluded in the seller's disclosure. Mr. Hale testified that the propane tank was part of the property to be sold because Mr. Pettit told him everything on the property was for sale and did not indicate the propane tank was leased. The trial court believed Mr. Hale, and we defer to that credibility determination. *Welek Realty, Inc. v. Juneau,* 596 S.W.2d 495, 498 (Mo.App. S.D.1980). Inasmuch as the propane tank was already included in the purchase price, the prospective buyer who included the propane tank in the property description made a full price offer. Thus, there was substantial evidence to support a finding that Hale & Hale produced a ready, willing, and able buyer entitling it to a commission. The Pettits' fifth point is denied.

 In their sixth point, the Pettits argue that the trial court erred in awarding an attorney fees because there was no substantial evidence to support it. A trial court's decision to grant attorney fees is reviewed for an abuse of discretion. *Trout v. State,* 269 S.W.3d 484, 487 (Mo.App. W.D.2008). We presume the award of attorney fees to be correct, and the party challenging the award has the burden to overcome the presumption. *Id.* Hale & Hale presented evidence that the exclusive listing agreement entitled it to reimbursement for the cost of an attorney to collect the commission. Mr. Hale testified that his attorney performed thirty hours of work on his case at an hourly rate of $150.00. The trial court determined $4,000 was reasonable compensation based on this evidence. Because the Pettits have not shown that the trial court abused its discretion, they have failed to overcome the presumption. Accordingly, the Pettits' sixth point is denied.

Hale & Hale filed a motion for attorney fees and expenses on appeal, which was taken with the case. We may award such fees and expenses on appeal when entitlement is based on a written agreement. *See Luttrell,* 67 S.W.3d at 648. According to the exclusive listing agreement, the Pettits agreed that: "[if] any broker hires an attorney to enforce the collection of any commission payable pursuant to this contract, and is successful in collection ... owner agrees to pay such brokers actual attorneys fees and cost." Based on this provision, we grant Hale & Hale's motion. *See Bechtle v. Tandy Corp.,* 77 S.W.3d 689, 696 (Mo.App. E.D.2002) (interpreting provision awarding attorney fees based on enforcement of agreement to include defending post-trial motions). We remand to the trial court for a hearing to determine a reasonable award of attorney fees on appeal.

### Conclusion

For the foregoing reasons, we affirm the trial court's judgment and remand the case to the trial court for the sole purpose of determining a reasonable award of attorney fees.

WELSH and MITCHELL, JJ. concur.