Maria STANDER, Appellant,

v.

Linda SZABADOS, Respondent.

No. WD 75697.

Missouri Court of Appeals,
Western District.

June 11, 2013.

Gaylin Rich Carver, Jefferson City, MO, for Appellant.

F. Randall Waltz, III, Jefferson City, MO, for Respondent.

Before Division I: GARY D. WITT, Presiding Judge, and THOMAS H. NEWTON and MARK D. PFEIFFER, Judges.

MARK D. PFEIFFER, Judge.

Maria Stander ("Stander") appeals from the judgment of the Circuit Court of Cole

County, Missouri ("trial court"), in favor of Linda Szabados ("Szabados"), on her counterclaims to quiet title to Szabados as joint tenant with Stander in certain improved real property ("the Property").[1] We affirm.

## Facts and Procedural History [2]

Stander and her sister, Szabados, entered into an oral agreement to contribute equally to purchase the Property in February 2002. Due to Stander's superior credit standing (because she was employed and Szabados was not), the Property was purchased in Stander's name individually. The Property was purchased for $92,000, with a $20,000 down payment and a $72,000 loan. Stander and Szabados agreed that Szabados would pay one-half of the purchase price. Stander required Szabados to pay her share of the loan payment each month in cash.

During the term of the loan, Szabados, using Stander's identity, arranged refinancing, resulting in a lower interest rate and shorter payoff period. Stander did not object to Szabados's conduct. When the loan was paid off, Stander received a check for $1,200 for a refund from the escrow. When Szabados learned of the refund, she asked for half, but Stander refused. Szabados also demanded that Stander add Szabados's name to the title, but Stander refused to re-title the Property to reflect Szabados's one-half interest.

In August 2010, without Stander's permission, Szabados used Stander's identity and executed a general warranty deed ("Deed") conveying the Property from Stander to Stander and Szabados's daughter. When Stander discovered what Szabados had done, Stander filed suit against Szabados and others requesting, among other things, that the trial court set aside the Deed, because Szabados had forged Stander's name on the Deed, and award Stander damages based upon Szabados's fraud. Szabados counterclaimed, requesting, among other things, that the trial court quiet title in the Property to Stander and Szabados as tenants in common and partition the Property by sale, or alternatively, to award her damages resulting from Stander's fraud.

After a bench trial, the trial court issued its judgment. As pertinent to this appeal, the trial court:

- found in favor of Stander on her claim (i) to set aside the Deed as void because it was not signed by Stander; (ii) of fraud against Szabados, assessing Stander's damages at one dollar, finding that no credible evidence of special damages was received;
- found in favor of Szabados on her counterclaim (i) to quiet title and parti-

1. The Property is commonly known and numbered as 1709 Bunker Hill Road, Jefferson City, Cole County, Missouri, and is legally described as: Lot No. 101 of Colonial Hills Estates Subdivision, Section 5, located in the City of Jefferson, Missouri, per plat of record in Plat Book 11, Page 379, Cole County Recorder's Office.

2. The record contains conflicting evidence concerning crucial questions of fact. "Conflicts in the evidence were for the trial court to resolve, and the facts must be taken in accordance with the result reached by the trial court." *Trenton Trust Co. v. W. Sur. Co.,*

599 S.W.2d 481, 483 (Mo. banc 1980), *superseded by statute on other grounds as stated in Chouteau Auto Mart, Inc. v. First Bank of Mo.,* 55 S.W.3d 358, 362 (Mo. banc 2001). "The trial court, when sitting as the trier of fact, may believe all, part or none of the testimony of any witness." *Id.* In its judgment, the trial court specifically found Stander not to be a credible witness. "Accordingly, the statement of facts which follows treats the evidence in a light most favorable to the judgment of the trial court, and defers to the judgment of the trial court on matters in which the evidence is in conflict." *Id.*

tion, finding that Stander's defense of the statute of frauds was not supported by either the pleadings or the facts, quieting title to Stander and Szabados as tenants in common with each holding an undivided one-half interest in the Property, and ordering the Property partitioned by sale but staying the sale requirement until the judgment becomes final (either by operation of law or by resolution by appeal); (ii) for fraud, but finding no unique damages given the quiet title and partition relief granted.

Stander timely appeals, asserting five points of trial court error.

### Standard of Review

The standard of review for a bench-tried civil case is that set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Id.* We view the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the judgment, disregarding evidence and inferences to the contrary. *Id.* "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.* "We defer to the trial court's determination of the credibility of the witnesses." *River Oaks Homes Ass'n v. Lounce*, 356 S.W.3d 855, 859 (Mo. App. W.D.2012).

### Analysis

**Standing**

■ In her fourth point, Stander contends that the trial court erred in quieting title in favor of Szabados because she did not have standing to bring a quiet title action in that she did not have legal or equitable title in the Property. Because "[c]ourts have a duty to determine if a party has standing prior to addressing the substantive issues of the case," we will address that issue first. *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012) (citing *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002)). A party's standing to sue is a question of law that we review *de novo* on appeal. *Id.* We determine standing on the basis of the petition, along with any other undisputed facts. *Blue Cross & Blue Shield of Mo. v. Nixon*, 81 S.W.3d 546, 551 (Mo.App. W.D.2002).

■ "Standing refers to a party's right to seek relief." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 622 (Mo. App. E.D.2009). It "'requires that a party seeking relief have a legally cognizable interest in the subject matter and that [s]he has a threatened or actual injury.'" *Id.* (quoting *E. Mo. Laborers Dist. Council v. St. Louis Cnty.*, 781 S.W.2d 43, 46 (Mo. banc 1989)). "Standing requires the party to be sufficiently affected so as to ensure a justiciable controversy." *Id.* A party must have some actual, justiciable interest—a recognizable stake. *Id.*

■ "A suit to quiet title, such as that filed by [Szabados], is a statutory action, and it is an appropriate means to determine the respective estates, titles, and interests of multiple people claiming an interest in land." *Robson v. Diem*, 317 S.W.3d 706, 712 (Mo.App. W.D.2010). Section 527.150 [3] governs actions to quiet title and authorizes relief under both legal and equitable principles:

1. Any person claiming any title, estate or interest in real property,

---

**3.** All statutory references are to the Revised Statutes of Missouri 2000.

whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property.

2. And upon the trial of such cause, if same be asked for in the pleadings of either party, the court may hear and finally determine any and all rights, claims, interest, liens and demands, whatsoever of the parties, or of any one of them, concerning or affecting said real property, and may award full and complete relief, whether legal or equitable, to the several parties, and to each of them, as fully and with the same force and effect as the court might or could in any other or different action brought by the parties, or any one of them, to enforce any such right, claim, interest, lien or demand, and the judgment or decree of the court when so rendered shall be as effectual between the parties thereto as if rendered in any other, different or separate action prosecuted therefor.

"The statute is remedial in nature and is to be liberally construed." *Robson*, 317 S.W.3d at 712 (internal quotation omitted). "A person who enters into a contract for sale of a piece of real property with the legal owner of the property acquires equitable title." *Id.* at 713 (citing *Allied Pools, Inc. v. Sowash*, 735 S.W.2d 421, 424 (Mo. App. W.D.1987), and *Bath v. Bath*, 233 S.W.3d 742, 743 (Mo.App. S.D.2007)).

Conversely, lack of title "goes fundamentally to standing, since a quiet title plaintiff must have some legal or equitable title to the subject property." *Bath*, 233 S.W.3d at 743. It is not enough to claim title, legal or equitable, to real property where the claim for title flows from an alleged agreement with a person or entity that has no title to the property in dispute.

Consequently and fundamentally, plaintiff needed a contract with a property owner to claim equitable title via equitable conversion. Her only agreement was with Cheney Bath, who had no title. Plaintiff could not acquire and cannot claim title through dealings with a non-owner.

*Id.* Szabados had no *legal* title in the Property. Thus, to have standing, Szabados's counter-petition had to allege facts to support her claim of *equitable* title to the Property, acquired from the *legal* owner of the Property, her sister—Stander. *Id.*

Szabados alleged in her counter-petition that she and Stander decided to purchase a home together, equally sharing the cost and expenses. They each paid one-half of the down payment for the Property, with the oral agreement and understanding between them that each would have a property interest as tenants in common in the Property. Because Stander was the only one employed at the time, at her insistence and with Szabados's passive concurrence, Stander's name was the only purchaser's name placed on the warranty deed from the sellers. Thereafter, consistent with their oral agreement, Stander and Szabados each paid one-half of the mortgage payments on the Property each month from the date of purchase until the mortgage was paid in full. Szabados also paid one-half of all utility bills and property taxes for the Property during her nearly eight years of occupancy, as well as one-half of maintenance for, and improvements to, the Property.

As noted above, standing is determined solely on the basis of the petition, *Kinder v. Holden,* 92 S.W.3d 793, 803 (Mo.App. W.D.2002), and after reviewing the petition, we conclude that Szabados alleged sufficient facts which, if proven, were sufficient to establish that she possessed equitable title as a tenant in common of the Property. Thus, Szabados had standing to bring a quiet title action.

Point IV is denied.

## Statute of Frauds

In her first point, Stander asserts that the trial court misapplied the law in finding that the Statute of Frauds did not operate to bar Szabados's quiet title claim.

■ In pertinent part, the Statute of Frauds provides that:

> No action shall be brought . . . to charge any person upon any agreement made . . . upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith. . . .

§ 432.010. Rule 55.08 [4] provides in pertinent part that:

> In pleading to a preceding pleading, a party shall set forth all applicable affirmative defenses and avoidances, including but not limited to . . . statute of frauds. . . . A pleading that sets forth an affirmative defense or avoidance shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance.

Stander failed to raise the affirmative defense of the Statute of Frauds in her answer to Szabados's Counter–Petition and, likewise, Stander failed to object to testimony regarding the oral contract at trial. Stander's failure to raise the Statute of Frauds defense in her answer or at trial by objecting to testimony regarding the oral contract constitutes a waiver. *Norden v. Friedman,* 756 S.W.2d 158, 162 (Mo. banc 1988).

■ Even if the Statute of Frauds had not been waived, one or more exceptions to the Statute of Frauds would apply to remove the sisters' oral agreement from its application. *Mika v. Cent. Bank of Kansas City,* 112 S.W.3d 82, 88 (Mo.App. W.D. 2003). Equitable exceptions to the Statute of Frauds are well established and generally fall into three broad categories: (1) "to prevent perpetration of a fraud by application of the bar of the statute"; (2) "by application of promissory estoppel"; (3) "where there has been partial or full performance." *Id.* at 88–89. "All three categories are somewhat related and generally can be said to be used to prevent fraud or gross injustice." *Id.* at 89.

■ Without objection, Szabados testified at trial that the sisters agreed that they would "pay the house together, pay the down payments together and the monthly payment together and any improvements for the house together." Szabados testified that for eight years, until the loan on the Property was paid in full, she made half of all the payments, as she had agreed to do. The trial court found that Szabados was credible and truthful as to the terms of the oral agreement and as to her full performance thereunder; thus, the trial court concluded that Szabados's full performance according to the terms of the parties' oral agreement removed the agreement from the Statute of Frauds and established her equitable title to an undivided half interest as a tenant in common with Stander in the Property. The trial

---

4. All rule references are to I MISSOURI

court did not misapply the law in finding that neither the pleadings nor the facts supported the defense of the Statute of Frauds.

Point I is denied.

## Fraud: Failure to State a Claim

■■■ In her third point, Stander asserts that Szabados failed to state a claim for fraud, claiming that Szabados failed to plead facts supporting the fraud elements of representation, materiality, and right to rely. Stander submits that Rule 55.27(g)(2) provides that this defense may be raised for the first time on appeal. However, the last sentence of Rule 55.27(g)(2) was amended effective January 1, 2012, to delete the phrase "or at the trial on the merits, *or on appeal.*" (Emphasis added.) The deletion of the phrase indicates that the defense may no longer be raised for the first time on appeal. *See Kansas City Power & Light Co. v. Bibb & Assocs., Inc.,* 197 S.W.3d 147, 160–61 (Mo. App. W.D.2006). The current Rule 55.27(g)(2) states that:

> A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 52.04, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 55.01, or by motion for judgment on the pleadings.

Because Stander did not raise the defense of failure to state a claim in any pleading permitted under Rule 55.01 or by a motion for judgment on the pleadings, the defense has been waived. *See State ex rel. Heiserman v. Heiserman,* 941 S.W.2d 768, 770 (Mo.App. S.D.1997) ("[F]ailure to plead an

affirmative defense results in waiver of that defense.") [5]

Point III is denied.

## Fraud: No Substantial Evidence

■■■ In her second point, Stander maintains that substantial evidence did not support each element of Szabados's fraud claim. The nine essential elements of fraud, as were pleaded by Szabados in her counter-petition against Stander, are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988). The failure to establish any one of the elements is fatal to recovery. *Id.* "The party alleging fraud bears the burden of proving each element and must satisfy that burden with clear and convincing evidence." *Kempton v. Dugan,* 224 S.W.3d 83, 87 (Mo.App. W.D.2007). "Fraud will not be presumed but may be inferred and shown by circumstantial evidence." *Id.* at 88.

Stander argues that Szabados failed to present substantial evidence to prove the elements of representation, materiality, her ignorance of the falsity of the representation, her right to rely on the representation, and her consequent and proximately caused injury. We will address each of these disputed elements in turn.

---

5. Furthermore, as reflected in our discussion of Stander's second point on appeal, Szabados both pleaded the necessary elements of a fraud claim and presented substantial evidence to support the fraud claim.

### Representation

Stander argues that Szabados's claim that Stander represented that the Property would be owned by both parties after the mortgage was paid in full was merely an opinion and a future expectation or prediction and does not satisfy the pleading requirement for the first element of fraud. We disagree. A representation may be an expression of opinion or a statement of fact, depending upon the surrounding circumstances. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 358 (Mo. App. E.D.1993). Here, the essence of Szabados's fraud claim is that Stander represented that if Szabados would pay one-half of the down payment, the loan payments, and any improvements to the Property, that Szabados would be co-owner of the Property. Based on this representation, and having no reason to believe that Stander would not honor her representation, Szabados made the agreed-upon payments. Szabados's evidence constitutes substantial evidence supporting the trial court's conclusion that the representation made by Stander was a misrepresentation of a statement of fact.

### Materiality

Stander argues that Szabados did not present substantial evidence that Stander's statement that "they would own the [P]roperty together" induced Szabados to move in and make cash-only payments to Stander every month for eight years. "A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *Grossoehme v. Cordell*, 904 S.W.2d 392, 397 (Mo.App. W.D.1995). "The test of materiality is objective and not subjective." *Id.* "[A] representation is material if it relates directly to the matter in controversy and is of such a nature that the ultimate result would not have followed if there had been no representation, or if the one who acted upon it had been aware of its falsity." *Refrigeration Indus., Inc. v. Nemmers*, 880 S.W.2d 912, 917 (Mo.App. W.D.1994) (internal quotation omitted). "It is not necessary that the representation be the sole inducement to act; it is sufficient if the representation is a material factor in the decision to act." *Id.* (internal quotation omitted).

Szabados testified that she and Stander had both been living in apartments and had talked for a long time about getting a house together. According to Szabados, the sisters agreed that they would "pay the house together, pay the down payments together and the monthly payment together and any improvements for the house together." Szabados testified that she made half of all the payments as she had agreed to do. The trial court specifically found that Szabados was truthful as to the oral agreement and her full performance thereunder. "We defer to the trial court's determination of the credibility of the witnesses." *River Oaks Homes Ass'n v. Lounce*, 356 S.W.3d 855, 859 (Mo.App. W.D.2012).

We find that this evidence constitutes substantial evidence supporting the trial court's conclusion that Stander's representation was a material factor in Szabados's decision to pay half of the down payment, monthly house payments, and cost of improvements for eight years.

### Ignorance of Falsity

Stander asserts that Szabados did not present substantial evidence to prove that she was ignorant of the falsity of Stander's representation.

Stander testified that she never had any intention of putting Szabados's name on the deed, she never told Szabados

that she could be part owner of the house, and instead, she told Szabados *years later* that she would not put Szabados's name on the deed or loan nor provide Szabados receipt documentation to confirm Szabados's payments toward the mortgage.[6] Stander also testified that although Szabados made some payments for water service, Szabados did not make any payments to her for rent or contribute to the mortgage payment. The trial court, however, expressly found Stander's testimony completely lacking in credibility.

In contrast, the trial court found Szabados was credible and truthful as to the agreement and performance of the terms of the agreement between the parties. Szabados alleged that in late 2001, she and Stander decided to purchase a house together and equally share the cost and expenses. The closing on the Property took place on February 17, 2002. Szabados allowed the Property to be titled in Stander's name only because "[w]e were sisters, I trust her, and on top of that she was Jehovah Witness, and, you know, who would not trust Jehovah Witness." Szabados testified that she made all her payments to Stander in cash because Stander did not want her to pay by check. Szabados also testified that she paid half of the security escrow, half of the down payment, half of the loan payments during the term of the loan, and half of the cost of maintenance and improvements—consistent with a person operating under the belief that

she possesses an ownership interest in the Property.

We find that Szabados presented substantial evidence to support the trial court's conclusion that Szabados was ignorant of the falsity of Stander's representation that the Property would be owned by both parties at the time the sisters entered into their joint ownership agreement.

**Right to Rely**

 When determining whether or not reliance was justifiable, a court must "consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relation of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and the respective knowledge and means of knowledge of the parties." *Kratky v. Musil*, 969 S.W.2d 371, 376 (Mo.App. W.D.1998) (internal quotation omitted). "The right to rely on a representation is ordinarily a question of fact for the trier of fact." *Id.* (internal quotation omitted).

 Stander claims that Szabados did not have a right to rely upon Stander's representation that she would jointly title the Property with Szabados because Stander refused to give Szabados any proof that she was making payments to her, would not let Szabados pay by check, and would not let Szabados "be on the deed."

Szabados testified that she and Stander grew up in Honduras. When Stander came to Jefferson City, Szabados helped

---

**6.** Aside from the fact that the trial court found Stander's testimony lacking in credibility, we also note that elements of fraud are to be measured *at the time the false representation is made,* not at a point in time years *after* the alleged misrepresentation. *Joel Bianco Kawasaki Plus v. Meramec Valley Bank,* 81 S.W.3d 528, 538 n. 6 (Mo. banc 2002) ("The falsity of the representation must be determined as of the time it was made and as of the time it was intended to be and was relied

on.") (internal quotation omitted). While Stander's claim as to her express statements to Szabados years after the original alleged oral agreement may have been relevant to a statute of limitations defense, Stander did not plead or ever assert a defense based upon the statute of limitations. Thus, this evidence has little, if any, bearing on whether Szabados was ignorant of the falsity of Stander's representations *at the time the representations were originally made.*

her find an apartment and a job and helped her financially. The sisters were close; they did everything together and Szabados trusted her sister. They had talked a long time about getting a house together and moving out of the apartments they rented. They agreed that together they would pay the down payment, the monthly loan payment, and the cost of any improvements. Based on this oral agreement, Szabados did all of those things.

Szabados agreed that the Property would be titled in Stander's name alone because "by that time she was working, having a job, and she was the one that was owner with the name in title because of the job she was having, so that's why." Szabados explained, "Well, was because she— We were sisters, I trust her, and on top of that she was Jehovah Witness, and you know, who would not trust Jehovah Witness." She continued, "I was not working and that was a requirement, I don't know, for the loan." But Szabados thought the Property was hers too; because Stander never referred to the house as "my house," Szabados considered that confirmation that the house was also hers.

■ The general rule is that equitable relief is unavailable for fraudulent representations where the parties deal at arm's length, or a party relies on representations that would arouse the suspicion of one with ordinary prudence, or a party neglects means of information easily discoverable. *Stephenson v. First Mo. Corp.*, 861 S.W.2d 651, 656 (Mo.App. W.D.1993). However, this rule is inapplicable where a distinct and specific representation is made to be acted upon for the purpose of inducing action and which has induced action. *Id.* (citing *Tietjens v. Gen. Motors Corp.*, 418 S.W.2d 75, 82 (Mo.1967)). "The same general principle has been expressed by this court in the following terms: 'It is no excuse for, nor does it lie in the mouth of

the [counterclaim] defendant to aver that [the counterclaim] plaintiff might have discovered the wrong, and prevented its accomplishment, had [s]he exercised watchfulness, because this is but equivalent to saying "You trusted me; therefore I had the right to betray you." ' " *Tietjens*, 418 S.W.2d at 82 (quoting *Pomeroy v. Benton*, 57 Mo. 531 (1874)).

We find that Szabados presented substantial evidence supporting the trial court's conclusion that Szabados had a right to rely on Stander's representation that the Property would be jointly owned by both parties.

**Proof of Damages**

■ Stander asserts that Szabados failed to present credible evidence that she made monthly cash payments of $600 to Stander or that her damage was the proximate result of Stander's misrepresentation. Stander denied that Szabados made any cash payments to her. The trial court found Stander not to be a credible witness, while finding Szabados was truthful as to her payments related to the acquisition, upkeep, and mortgage payoff of the Property. Szabados's testimony is substantial evidence and supports the trial court's finding that Szabados did not receive a half interest in the Property even though she paid her fifty percent share of the payments related to the Property, as per her agreement with her sister. Szabados did not receive what she bargained for; therefore, she was injured. *See Shaw v. Raymond*, 196 S.W.3d 655, 660 (Mo.App. S.D.2006). This constitutes substantial evidence of Szabados's damages.

Point II is denied.

**Quiet Title: Superior Title**

■ In her fifth point, Stander claims that the trial court misapplied the law in quieting title in favor of Szabados because Szabados did not prove that she

had superior title. In a quiet title action, the trial court must "ascertain and determine the rights of the parties under the pleadings and evidence, grant such relief as may be proper and determine the 'better' title, as between the parties to the proceeding." *Manard v. Williams*, 952 S.W.2d 387, 389 (Mo.App. S.D.1997) (internal quotation omitted). As the proponent of a quiet title action, Szabados had "the burden to prove title superior to the other party, not superior to the whole world." *Id.* (internal quotation omitted). Szabados must prevail on the strength of her own title and not on any weakness in Stander's title. *Id.* "Indeed, *each* party to the action had the burden to prove title superior to the other." *Id.* In order to prevail on her quiet title claim, Szabados bore the burden of proving that she had entered into a contract regarding ownership of the Property with Stander, the legal owner of the Property. *Robson*, 317 S.W.3d at 713; *Bath*, 233 S.W.3d at 743.

At trial, Szabados testified as to her oral agreement with Stander, who had obtained legal title to the Property in February 2002, to contribute equally to the purchase of the Property. And, Szabados proved to the trial court that she paid one-half of the security escrow, one-half of the down payment, one-half of the monthly mortgage payments, one-half of the utilities, and one-half of maintenance and improvement costs. Although Stander denied that she and Szabados had an oral agreement or that Szabados made any payments on the Property, the trial court expressly found that Stander was not a credible witness. Conversely, the trial court found that Szabados was credible and truthful as to the agreement and as to her payments of one-half of the costs associated with the Property. "We defer to the trial court's determination of the credibility of the witnesses." *River Oaks Homes Ass'n*, 356 S.W.3d at 859.

Szabados's evidence constitutes substantial evidence supporting the trial court's conclusion that Szabados established her equitable title to an undivided one-half interest as a tenant in common with Stander in the Property in that she fully performed the parties' agreement relating to joint ownership of the Property.

Point V is denied.

## Conclusion

The judgment of the trial court is affirmed.

GARY D. WITT, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.